| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:17-cr-59 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| MYRON D. BAKER, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING MOTIONS TO SUPPRESS (DOCS. 27, 39, 53)**

---

This case is before the Court on the Motion to Suppress (Doc. 27), Amended Motion to Suppress (Doc. 39), and Amended and Supplemental Motion to Suppress (Doc. 53) (collectively, the "Motions to Suppress") filed by Defendant Myron D. Baker. Plaintiff United States of America (the "Government") filed a Response in Opposition (Doc. 60) to the Motions to Suppress and the Court held evidentiary hearings on the matter on September 6, 2018 and March 11, 2019. The parties declined to submit further memoranda after the March 11, 2019 hearing. This matter is therefore ripe for review. For the reasons below, the Court **DENIES** the Motions to Suppress (Docs. 27, 39, 53).

**I.    BACKGROUND**

**A.  Superseding Indictment**

In the Superseding Indictment entered October 10, 2017, Baker is charged with being a felon in possession of a firearm (Count 1); conspiracy to possess, with intent to distribute, carfentanil, fentanyl and heroin (Count 4); distribution of carfentanil resulting in serious bodily injury to an individual referred to as "J.R." (Count 5); distribution of carfentanil resulting in the

death of an individual referred to as "J.V." (Count 6); distribution of carfentanil resulting in serious bodily injury to an individual referred to as "M.D." (Count 7); and maintaining his residence for the purpose of manufacturing, distributing and using carfentanil, fentanyl, and heroin (Count 8). (Doc. 35.) The Court granted the Government's Motion to Dismiss Counts 2 and 3 of the Superseding Indictment on November 28, 2018. (Doc. 59.)

### B. Baker's Motions to Suppress

Baker filed three Motions to Suppress in this case. The first two were filed on his behalf by his original counsel, Aaron Durden. (Docs. 27, 39.) On February 7, 2018, Baker moved to substitute Daniel O'Brien for Mr. Durden as his counsel of record. (Doc. 44.) The Court granted that motion and Mr. O'Brien moved to continue the previously scheduled hearing on the Motions to Suppress. On September 4, 2018, Mr. O'Brien filed a third Motion to Suppress, which supplemented the earlier-filed Motions to Suppress. (Doc. 53.)

On September 5, 2018, the Court held an initial evidentiary hearing on the Motions to Suppress. The witnesses who testified at the hearing were Detectives Patrick Bell and Dustin Phillips with the Dayton Police Department, Jessica Clemons, Angels Wilcoxson, and Baker.

On November 30, 2018, Baker filed a Motion to Re-Open Motion to Suppress Due to Newly Discovered Witness and Evidence ("Motion to Re-Open"). (Doc. 64-2.) The Court granted the Motion to Re-Open and scheduled a further hearing on the Motions to Suppress for January 28, 2019. On that date, the Court determined that the proposed witness would need to have counsel appointed, however, and continued the hearing to March 11, 2019.

On March 11, 2019, the Court convened the hearing on the Motions to Suppress. Baker called Michael Fox as a witness for the defense. In response to all questions regarding the search

of Baker's residence on April 4, 2017, Mr. Fox asserted his right against self-incrimination under the Fifth Amendment. No other witnesses were called by either party.

By his Motions, Baker seeks to suppress (1) any evidence recovered from his person on April 4, 2017 at Delphos Carryout, (2) any statements made by him to law enforcement officers on April 4, 2017; and (3) any evidence seized from his residence pursuant to a search warrant on April 4, 2017. (R. 27, 39, 53.) Baker argues this evidence should be suppressed because his arrest and the search of his person on April 4, 2017 violated his Fourth Amendment rights and the affidavit supporting the search warrant for his residence lacked probable cause.

The Government opposes the Motions to Suppress, but represents that certain portions of the Motions are moot. Specifically, the Government does not intend to use any statements by Baker on the day of his arrest, except for his statement that a worker was present at Baker's residence. At the September 5, 2018 hearing, Baker's counsel stated that he had no objection to the Government's use of that statement. (Doc. 55 at 79-80.) The arguments in the Motions to Suppress regarding Baker's statements on April 4, 2017 are therefore moot. The Government also represents that dismissal of Counts Two and Three of the Superseding Indictment moots the suppression of drug evidence seized from Baker's person on April 4, 2017. (Doc. 60 at 2 n.1.) Per these representations, the Government will be barred at trial from (1) using any of Baker's statements on April 4, 2017, with the exception of his statement regarding the worker at his residence, and (2) introducing any drug evidence seized from Baker's person on the same date. Below, the Court considers Baker's arguments for suppression of the evidence found at his residence pursuant to a search warrant.

## II.  FACTUAL FINDINGS

From 2015 through early 2017, Detectives Patrick Bell and Timothy Braun of the Dayton Police Department ("DPD") were assigned to the Heroin Eradication Apprehension Team ("HEAT") Task Force.  The HEAT Task Force investigated heroin and opioid overdoses in the city of Dayton, Ohio.

On March 31, 2017, Detectives Bell and Braun responded to a double overdose at a Taco Bell Restaurant at 3013 Salem Avenue, Dayton, Ohio.  One of the overdose victims later died. Detective Bell learned from witnesses that Defendant Myron Baker and a second individual were involved in the drug sales that resulted in the overdoses.

On April 3, 2017, based upon information from a confidential source and research using the DPD's Management Information System database, Detective Bell determined that 522 Lexington Avenue was Baker's residential address.  DPD officers also observed a blue Chevy Impala parked at 522 Lexington that a source had described as associated with Baker.  The confidential source who provided Baker's address was a drug user—a fact shared with Detective Bell.  Detective Bell had not worked with the confidential informant before.  Nonetheless, he found the information that the confidential informant provided consistent with other information obtained from other sources.  For example, the informant identified the make and model of the vehicle that the officers later observed at the residence.

On the morning of April 4, 2017, Detectives Bell and Braun asked DPD Detectives Dustin Phillips and Jason Rhodes to conduct surveillance at 522 Lexington Avenue.  Later that morning, Detective Phillips, while on surveillance, observed Baker leave 522 Lexington and get into a grey SUV being driven by a female.  Detective Phillips followed Baker and observed him enter a convenience store called Delphos Carryout.

Detective Phillips entered Delphos Carryout, saw Baker, and said "Myron Baker" to him. Baker disputes what happened when he encountered Detective Phillips in the Delphos Carryout, but the facts in dispute are not material due to the Government's agreement not to use Baker's statements (with the lone exception previously noted) or any evidence seized from him as a result of this encounter. Baker does not dispute that he was arrested for possession of drugs at Delphos Carryout. After Baker's arrest, Detective Phillips placed him in the backseat of a police cruiser and told him that they were planning to go to his residence. Detective Phillips asked Baker if there was anyone inside his house who might pose a safety concern. Baker replied that there was one person working inside the house. Detective Phillips updated Detectives Bell and Braun with this information.

Upon learning of the arrest, Detectives Bell and Braun drove to 522 Lexington Avenue. The detectives and a uniformed police officer, Rodney Barrett, went to the front door and knocked. Michael Fox, a home contractor who had been residing at Baker's residence for a few weeks, answered the door and invited the officers into the residence. Detectives Bell and Braun advised Fox that they intended to seek a search warrant and secured the residence for their safety. Once they determined that no additional individuals were inside the residence, Detective Braun continued to interview Fox while Detective Bell returned to the police department to prepare the search warrant affidavit. Officer Barrett remained at the residence until the search warrant was sought and authorized.

In the search warrant affidavit, Detective Bell recited his law enforcement background, his experience in drug investigations, a factual section detailing information provided to him by informants and witnesses and the investigative steps taken in the investigation. The affidavit also contained the information Fox provided to law enforcement.

Later that day, still on April 4, 2017, Dayton Municipal Judge Christopher Roberts reviewed the affidavit and authorized issuance of the search warrant. Law enforcement officers executed the warrant on the same date and recovered, among other things, a handgun, a shotgun, a press, a ballistic vest, and a DVR camera surveillance system.

### III.    LEGAL STANDARD

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quoting U.S. Const. amend. IV). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than reasonable suspicion." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). It requires only a "probability of substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983)). When determining whether probable cause exists, the judge reviewing an application for a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Dunning*, 857 F.3d 342, 346 (6th Cir. 2017) ("We review the totality of the circumstances to determine whether probable cause supported a search warrant . . .").

The exclusionary rule is "a prudential doctrine which prohibits 'evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). However, "the exclusion of evidence under the rule 'is not a personal constitutional right' nor is it 'calculated to

redress the injury to the privacy of the victim of the search.'" *Moorehead*, 912 F.3d at 967

(quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). When applying the exclusionary rule,

courts must ask whether the benefits of deterrence outweigh the costs of exclusion. *Davis v.

United States*, 564 U.S. 229, 237 (2011); *United States v. Buford*, 632 F.3d 264, 270 (6th Cir.

2011). "Where suppression fails to yield appreciable deterrence, exclusion is clearly

unwarranted." *Davis*, 564 U.S. at 237 (citations and brackets omitted).

Additionally, a "good-faith" exception to the exclusionary rule permits the introduction

of evidence obtained in violation of the Fourth Amendment when the evidence is "obtained in

the reasonable good-faith belief that a search or seizure was in accord with the Fourth

Amendment." *United States v. Leon*, 468 U.S. 897, 909 (1984) (citations omitted). "Following

*Leon*, courts presented with a motion to suppress [challenging a warrant] must ask whether a

reasonably well trained officer would have known that the search was illegal despite the

magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal

quotes and citations omitted).

## IV.   ANALYSIS

### A.  Whether Probable Cause Existed for Issuance of Search Warrant

When reviewing an issuing magistrate's finding of probable cause, the Court should

uphold that determination "so long as the magistrate had a 'substantial basis for ... conclud[ing]

that a search would uncover evidence of wrongdoing.'" *United States v. Pelham*, 801 F.2d 875,

877-78 (6th Cir. 1986) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Because the

Government agreed not to use Baker's statements or drug evidence seized from Baker's person

on April 4, 2017, the Court excludes that evidence from its consideration of the affidavit. *See

United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) ("The mere inclusion of tainted

evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.") (internal citations omitted). Even without those facts, the affidavit contains a substantial basis for Judge Roberts' finding of probable cause and issuance of the warrant.

Excluding Baker's arrest at Delphos Carryout, the information in the affidavit supporting the finding of probable cause comes primarily from two sources: a confidential informant and Fox. The confidential informant informed Detectives Bell and Braun that Baker and another individual worked together and prepared drugs for sale at 522 Lexington Avenue. (Affidavit ¶ B.) The informant further stated that Baker and his partner sold most of their drugs in Gallipolis, Ohio because they make much more profit and have a much larger customer base there. (*Id.*) The informant said that Baker drives a blue Chevy Impala, which is usually parked in front of the residence, and that he was involved in the sale of the lethal dose of drugs that caused the overdose death at the Taco Bell restaurant. (*Id.*)

Detective Braun's interview of Fox, the worker who was staying at Baker's residence, revealed additional information about Baker's activities at 522 Lexington Avenue. Fox said that, in exchange for remodeling Baker's bathroom at the residence, Baker paid him "half a gram of heroin a day." (Affidavit ¶ F.) Fox was present inside the residence on "more than five occasions" when Baker and a "girl he knew as Tarra" mixed heroin and fentanyl for sale. (*Id.*) Fox observed "large bags of heroin on multiple occasions" and had "made multiple runs to Gallipolis, Ohio with drugs for Baker and Tarra to sell." (*Id.*) Fox told Detective Braun that a camera system installed in the house "should have evidence of Baker and Tarra mixing heroin and fentanyl." (*Id.*) Fox had seen "two large bags of drugs in the house the previous evening."

(*Id.*)  Of particular significance to the double overdose investigation, Fox said that Baker had told him about the "heroin overdose death" and was "extremely nervous the previous evening" about it.  (*Id.*)  The information provided by Fox is so substantial that, standing alone, it provides a substantial basis for concluding that a search would uncover evidence of wrongdoing at Baker's residence.

Baker argues the affidavit does not establish probable cause for two reasons.  First, he argues that the warrant fails the "test of reliability" because it is based on statements from an unreliable confidential informant.  Second, he argues that it was unlawful for officers to walk through Baker's residence to secure the property while they attempted to obtain the search warrant.  Baker contends that, without the information obtained from the walk-through, the affidavit does not demonstrate probable cause.  The Court addresses each of these arguments in turn.

The confidential informant was previously unknown to Detective Bell.  A police officer may still use information provided by such an individual, however, so long as there is corroborating information from other sources.  *See United States v. Johnson*, 39 Fed. App'x 114 (6th Cir. 2002) (finding probable cause where officer "received information from other sources confirming the information received from the informant"); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (information derived from anonymous informant whose reliability is not established may still be "sufficient to create probable cause when there is some independent corroboration by the police of the informant's information").  Here, Detective Bell received corroborating information from other sources.  The informant stated that Baker lived at 522 Lexington Avenue and drove a blue Chevy Impala.  Detectives confirmed that address was associated with Baker through a law enforcement database and saw Baker leave the residence at

that address and get into a blue Chevy Impala parked outside. (Affidavit ¶ C-D.) Fox corroborated the informant's statements that Baker dealt drugs in Gallipolis and was implicated in the double overdose under investigation. (*Id.* at ¶ F.) It was permissible for Detective Bell to rely on the informant's information in light of its corroboration by other sources.

Baker also argues that Detective Bell should have disclosed in the affidavit that the informant was a drug user. Baker cites *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997) for the proposition that a warrant is subject to challenge for failing to disclose a source's known criminal history. That the informant was a drug user might have been material if the information provided was not corroborated by other sources. As discussed, the information was corroborated by different sources. In addition, Detective Bell testified at the initial hearing that, based on his extensive professional experience in these types of investigations, the informant did not appear to be under the influence of drugs when they provided the information to him. Thus, in light of the totality of the circumstances, Detective Bell did not conceal material information from the issuing magistrate's consideration. *Cf. Hall*, 113 F.3d at 158-59 (government conceded state trooper's omission of informant's convictions for harassing communication and false report concealed material information from issuing magistrate).

Baker's second argument also does not undermine the finding of probable cause. Detective Bell states in the affidavit that, during a walkthrough to secure the property before execution of the anticipated search warrant, he saw in plain view a black and silver digital scale. He recognized the scale as the type commonly used to weigh illegal drugs. The digital scale is the only item found during the walkthrough that is referenced in the affidavit and supports the finding of probable cause. As mentioned, there is a substantial basis for issuance of the search

warrant, even without this information. Thus, even if the fruits of the walkthrough were excluded, it would not alter the conclusion that the affidavit supports a finding of probable cause.

### B. Whether Officers Were Entitled to Good Faith Exception

The Government alternatively argues that, even if the warrant lacked probable cause, the officers relied upon it in good faith, precluding application of the exclusionary rule. For the good faith exception to apply, an officer must have had a "reasonable, objective and good faith belief that the search warrant was valid." *Leon*, 468 U.S. at 906. In *Leon*, the Supreme Court also identified specific circumstances in which the good faith exception does ***not*** apply, such as where a warrant is based on a "knowing or reckless falsity contained in the affidavit," (*id*. at 914); a magistrate has "abandoned his judicial role by failing to be neutral and detached, instead serving as a 'rubber stamp' for law enforcement," (*id.*); the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," (*id.* at 923); or where the officers "were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.

The officers' testimony at the initial hearing and the facts contained in the affidavit establish that the officers had a reasonable, objective and good faith belief that their search warrant for 522 Lexington Avenue was valid. Baker has not presented evidence to undermine that conclusion, or that any of the specific circumstances identified in *Leon* are present here. Thus, the Court further finds that, even if there were not a substantial basis to support Judge Roberts' finding of probable cause for issuance of the warrant, the good faith exception would nevertheless apply.

**V.      CONCLUSION**

For the reasons above, the Court **DENIES** the Motions to Suppress (Docs. 27, 39, 53).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, March 12, 2019.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
