**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:17-cr-59 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| MYRON BAKER, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR**
**WITHDRAWAL OF A PLEA (DOC. 128)**

---

Pending before the Court is the Motion for Withdrawal of a Plea (Doc. 128) (the "Motion") filed by Defendant Myron Baker ("Baker") on January 3, 2020. Mr. Richard Mayhall, Esq., was subsequently appointed as counsel for Baker on February 18, 2020. (Doc. 137.) A hearing on the Motion took place on June 16, June 25, July 17, and August 28, 2020, during which five witnesses—including Baker—testified. (Docs. 152, 153, 154, 155.) Following the hearing, Baker filed a Post-Hearing Brief and Closing Argument. (Doc. 156.) In response, the United States of America (the "Government") filed a Response in Opposition to the Motion (the "Opposition").[1] (Doc. 157.) For the reasons below, the Court **DENIES** the Motion.

I.  **BACKGROUND**

A. **The Charges Against Baker and Lead-Up to the Day of Trial**

Baker was charged with five counts in the Second Superseding Indictment: Count 1 – felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); Count 4 –

---

[1] The Opposition indicates that it opposes both Document 128 (the Motion) and Document 126. However, the Court struck Document 126. (*See* Doc. 127.)

conspiracy to distribute controlled substances and intent to distribute controlled substances, in violation of 21 U.S.C. § 846; Count 6 – distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count 7 – distribution of a controlled substance resulting in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and, Count 8 – using and maintaining a place for the purpose of manufacturing, distributing, and using controlled substances, in violation of 21 U.S.C. § 856(a)(1). (Doc. 102.) Baker initially entered pleas of not guilty to all counts. (*See* 10/10/2019 Minute Entry.)

As Baker acknowledges, the case involved "extensive pretrial litigation." (Doc. 156 at PAGEID # 1078.) Since its inception in 2017, Baker has admittedly been "represented by several different lawyers" in this case. (Doc. 153 at PAGEID # 834.) This includes that Aaron G. Durden, Esq. ("Mr. Durden") was appointed to represent Baker in April of 2017 (Doc. 19), relieved of his representation by way of a motion for substitution of counsel filed by Baker in February of 2018 (Doc. 44; 02/07/2018 Notation Order), and then re-appointed in May of 2019 to represent Baker at Baker's request (Docs. 88, 92). Mr. Durden was Baker's counsel leading up to, and during, the plea at issue in the Motion. Over the course of this case, Baker also has filed some *pro se* motions, despite being represented by counsel at the time. (*See, e.g.,* Docs. 88, 115 (stricken per Doc. 116), 120 (stricken per Doc. 124), and 143.)

## B. Day of the Anticipated Trial and Plea Colloquy

The Court set a jury trial to proceed on November 4, 2019 starting at 9:00 a.m. That morning, the Government, Mr. Durden, and Baker were all ready to proceed with a trial, and the jury was ready to be brought into the courtroom. (Doc. 153 at PAGEID # 152; Doc. 155 at PAGEID # 1033-34.) However, counsel for the parties continued to engage in discussions regarding a possible plea, thus delaying the start of a trial. (*See* Doc. 155 at PAGEID # 1034-35.)

At approximately noon that day, after being informed by the parties that they had agreed to a Rule 11(c)(1)(C) plea agreement, the Court commenced a change of plea hearing.[2] (Doc. 142.)

Baker was sworn in by the Court at the beginning of the plea colloquy and remained under oath. (Doc. 142 at PAGEID # 621.) During the plea colloquy, Baker informed the Court that he was 35 years old, had earned a GED, had attended some college, and could read and write English. (*Id.* at PAGEID # 621-22.) The Court confirmed with Baker that he had been able to understand and communicate with Mr. Durden (his attorney at the time), that Mr. Durden had answered any and all of his questions or concerns, and that he (Baker) understood everything that Mr. Durden had discussed with him. (*Id.* at PAGEID # 622-23.) The Court then asked about Counts Four and Six and whether Baker fully understood the charges to which he was pleading guilty, and Baker unequivocally replied, "Yes, sir. I understand." (*Id.*)

Moving on to the statement of facts that would be attached to his plea agreement, the Court asked Baker if he had reviewed the facts, discussed them with his attorney, understood them, had all of his questions about them answered, and if they were the facts to which he wished to enter his plea of guilty. (*Id.* at PAGEID # 623-24.) Baker responded affirmatively to each question. (*Id.*) After the Government's attorney read the statement of facts onto the record, Baker confirmed that he understood those facts, did not have any questions about them, they were the facts to which he wanted to enter pleas of guilty, and that those facts were true. (*Id.* at PAGEID # 624-29.) Baker, Mr. Durden, and the Government's attorney all signed and dated the factual statement, and

---

[2] The transcript of the plea colloquy indicates a start time of 9:16 a.m. and that the proceedings concluded at 12:53 p.m. (*See* Doc. 142 at PAGEID # 619, 656.) However, the plea colloquy did not start at 9:16 a.m. (Doc. 121 (indicating that court convened at 12:00 p.m. and recessed at 1:00 p.m.); *see also* Doc. 154 at PAGEID # 1010-11 (discussion among counsel and the Court concerning start time and referencing that the court reporter had indicated in an email to counsel that the "plea proceeding actually began at 11:58 a.m. as opposed to 9:16 a.m., although the 9:16 a.m. is reflected in actually [sic] Document 142, the Court record").) Additionally, the undersigned was obviously present at the plea colloquy and knows that it did not start at 9:16 a.m., but instead started much later in the morning after the parties had engaged in additional negotiations concerning a potential plea and subsequently informed the Court that Baker would be entering a plea of guilty to certain charges.

they initialed the bottom of pages of the Plea Agreement with its attached statement of facts.  (*Id.* at PAGEID # 629, 648-49; Doc. 119.)

The Court next reviewed the maximum penalties for Counts Four and Six, which Baker said he understood.  (Doc. 142 at PAGEID # 629-633.)  This included that Count Four held a mandatory minimum of ten years imprisonment and a maximum of life, and Count Six held a mandatory minimum of twenty years imprisonment and a maximum of life.  (*Id.*)  The Court also explained to Baker that it must consider the statutory factors of sentencing and the guidelines range, as well as that the plea was conditional and permitted Baker the right to appeal the denial of his earlier motion to suppress.  (*Id.* at PAGEID # 633-38.)  Baker stated that he understood.  (*Id.*)  The Court also asked Baker if he had understood his discussion with Mr. Durden about the guideline calculation and how the calculation may affect his sentencing disposition, and Baker responded, "Yes, Your Honor."  (*Id*. at PAGEID # 635-37.)  The Court asked Baker if he had any questions about the guidelines, how they work generally, and how they may affect his disposition, to which Baker responded that he did not.  (*Id.* at PAGEID # 638-39.)

The Court next addressed with Baker the Rule 11(c)(1)(C) provision in the plea agreement.  (*Id.* at PAGEID # 639-42.)  Throughout the explanation, the Court inquired of Baker whether he understood, and Baker repeatedly indicated that he did understand.  (*Id.*)  At the conclusion of that explanation, the Court asked Baker if he had any questions about the maximum penalties or sanctions, the factor of sentencing, including the guideline calculation, or his 11(c)(1)(C) provision, to which Baker responded, "No, Your Honor."  (*Id.* at PAGEID # 642.)

The Court then addressed with Baker his trial rights, which Baker confirmed he understood.  (*Id.* at PAGEID # 643-44.)  Baker also confirmed that he still wished to go forward with his plea.  (*Id.*)  The Court then discussed the terms of the plea agreement.  (*Id.* at PAGEID # 644-50.)  Baker

4

confirmed that he had read the plea agreement carefully, reviewed each and every provision in it with the assistance of his counsel, and believed that he fully understood the plea agreement and its provisions.  (*Id.*)  Additionally, Mr. Durden confirmed that he had talked to Baker about the plea agreement, reviewed each and every one of its provisions with Baker, and believed that Baker understood the plea agreement and its provisions.  (*Id.*)  Mr. Durden also indicated that, if Baker had any questions about any of those provisions, then he believed that he was able to answer Baker's questions and address his concerns.  (*Id.*)  Mr. Durden also indicated that he believed that the plea agreement and its provisions were acceptable to Baker.  (*Id.*)  Baker then, once again, confirmed that the plea agreement was acceptable to him.  (*Id.*)

The Court asked Baker if anyone had promised him anything in exchange for his plea of guilty, to which Baker responded, "No, Your Honor."  (*Id.* at PAGEID # 649-50.)  Baker also confirmed that no one said or did anything that gave him some impression that something was going to happen or not happen in return for the plea that was not contained within the plea agreement.  (*Id.*)  The following exchange then took place:

> THE COURT:  Mr. Baker, is there anyone forcing you, threatening you, compelling you to do this against your will?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  You have thought about it.  You have weighed all your different options.  You have talked to Mr. Durden on numerous occasions, considered everything, and this, then, is what you wish to do to enter these pleas of guilty; is that correct?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  And that's a voluntary decision on your part?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Mr. Baker, have you had any type of drugs, alcohol, or medication within the last 24 hours?

THE DEFENDANT: No.

THE COURT: So you are clear-headed here this morning?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Baker, are you entering these pleas to these charges because you are, in fact, guilty as charged?

THE DEFENDANT: Yes, Your Honor.

(*Id.* at PAGEID # 650-51.) Mr. Durden then stated that he considered Baker competent to enter his plea and that he believed Baker understood everything that had been discussed. (*Id.*) Baker then pleaded guilty to Counts Four and Six of the Second Superseding Indictment. (*Id.* at PAGEID # 651-52.)

The Court accepted Baker's guilty pleas to Counts Four and Six. (*Id.* at PAGEID # 652-54.) Additionally, among other things, the Court found Baker "in full possession of his faculties and is competent to enter his plea," that Baker "is not under any apparent influence of narcotics, hallucinogens, alcohol, or medication," and that Baker "understands the nature of these charges to which he has pled and the penalties that are provided by law for those violations." (*Id.*) The Court concluded the Change of Plea hearing by asking Baker if he had any questions, to which Baker responded, "No, Your Honor." (*Id.* at PAGEID # 655.)

### C. PSR and Hearing on the Motion

The Presentence Investigation Report ("PSR"), which was prepared on December 2, 2019 and revised on January 8, 2020, indicates under the heading "Adjustment for Acceptance of Responsibility" that Baker was interviewed on November 13, 2019 and "stood mute on acceptance and provided no statements regarding his acceptance of responsibility." (PSR at p. 11, ¶ 38.) As stated above, Baker filed the Motion a few weeks later, and a hearing on the Motion took place on several days.

Baker's mother, Angel Wilcoxson, testified at the hearing.  (Doc. 152 at PAGEID # 787.)
Ms. Wilcoxson was present at the courthouse on November 4, 2019.  (*Id.* at PAGEID # 796.)
Among other things, Ms. Wilcoxson testified that, while Baker was being held in jail prior to trial,
Baker never indicated that he wanted to plead guilty.  (*Id.* at PAGEID # 788.)  However, she
acknowledged that the possibility of Baker pleading guilty or taking a plea bargain had come up
before.  (*Id.* at PAGEID # 791.)  She testified that she spoke with Baker prior to his guilty plea on
the morning of the scheduled trial; their discussions included the subject of a plea and got
emotional.  (*Id.* at PAGEID # 790.)  According to Ms. Wilcoxson, she told Baker that she "was
about to turn 60 and [she] was in pretty good health, and whatever he needed to do to get back to
[her], that's what [she] wanted him to do."  (*Id.*)  She also testified that Baker "ended up pleading
guilty under pressure" and that Baker almost immediately—that same day—expressed regret in
pleading guilty and expressed a desire to withdraw the plea.  (*Id.* at PAGEID # 791.)  Baker's
friend, Jessica Clemons, also testified at the hearing that Baker was always adamant about going
to trial.  (*Id.* at PAGEID # 806.)

Baker also testified (twice) at the hearing, the second time as a rebuttal witness.  Baker
acknowledged that he was familiar with the court system and that paragraphs 54 through 100 of
the PSR documented his experience within the criminal justice system.  (*See* Doc. 153 at PAGEID
# 834, 924-32; PSR at pp. 13-25, ¶¶ 54-100.)  Among the many prior criminal matters involving
Baker, he had been charged with aggravated robbery with a deadly weapon, was represented by
an attorney, entered into plea negotiations, pleaded guilty, and was sentenced to at least three years
in prison.  (Doc. 153 at PAGEID # 924-25; PSR at pp. 14-15, ¶ 56.)  Baker also acknowledged
that he always knew, including on the day of his plea, that the conspiracy count against him carried
a minimum mandatory imprisonment of 10 years and the overdose counts carried a minimum

7

mandatory imprisonment of 20 years. (Doc. 153 at PAGEID # 902-03.)

Baker also testified that he never wanted to plead guilty, but instead wanted to go to trial. (*Id.* at PAGEID # 835.) He testified that the short amount of time that he had to consider the plea offer and the emotional state of his mother and friend (Jessica Clemons) combined to pressure him into pleading. (*Id.* at PAGEID # 837-38.) According to Baker, he felt pressured to plead guilty and immediately regretted his plea. (*Id.* at PAGEID # 838.) He expressed his desire to withdraw his plea to his mother, his friend (Ms. Clemons), and his lawyer (Mr. Durden) around the same day that he pleaded guilty. (*Id.* at PAGEID # 839, 849.) Baker also testified that he was distraught to the point that he did not "remember a lot" of the plea colloquy, and that he was not thinking clearly at the time of the plea as a result of having taken prescription medications prior to the plea, including Elavil. (*Id*. at PAGEID # 839-40.)

Baker testified that he wanted to withdraw his plea because he is not guilty. (*Id.*) He also said that, during his interview by the probation officer on or about November 13, 2019, he "didn't want to make a statement of accepting responsibility because [he] was innocent." (*Id*. at PAGEID # 841.)

In response to a question about the timing for filing the Motion, Baker explained that the Court had previously informed him that he "was not allowed hybrid representation" and that he was "not allowed to file motions on [his] own," so he "was trying to go about it in a way that would be acceptable to the courts." (Doc. 153 at PAGEID # 862.) Baker explained that was "the only reason that [the] motion was not filed before" December 13, 2019. (*Id.*)

Detective Timothy Braun testified for the Government regarding the amount of work required to prepare the case for trial, including locating witnesses, many of whom were involved in the drug underworld and some of whom required travel out of state. (*See, e.g.,* Doc. 154 at

PAGEID # 966-67, 979.)  He stated that trial preparations took "[n]umerous weeks" to interview the Government's ten to fifteen witnesses for the anticipated November 4, 2019 trial.  (*Id*. at PAGEID # 979.)  Detective Braun expressed his concern about locating witnesses for a potential future trial because many of them had addiction issues and were likely to experience declining memories or cognitive function (or possibly be dead).  (*Id.* at PAGEID # 994-95.)  Detective Braun also testified that one of the Government's witnesses had, in fact, died back on November 17, 2017 of a drug overdose.  (*Id*. at PAGEID # 965.)  However, among other things, Detective Braun acknowledged that significant evidence for the Government—including security videos—was still available should the case eventually proceed to trial.  (*Id*. at PAGEID # 988.)

Mr. Durden was forced to testify at the hearing.[3]  He testified that he had been a lawyer for approximately 32 years, 26 of which involved criminal law.  (Doc. 155 at PAGEID # 1028.) Among other things, Mr. Durden testified that, prior to Baker entering his plea, Mr. Durden had shared with Baker the options that Baker had and let Baker make his own decision on whether or not to accept the plea agreement and enter a guilty plea, and that Baker had asked to be allowed to get his mother's advice on the issue as well (which was done).  (*Id.* at PAGEID # 1049.)  In Mr. Durden's opinion, Baker appeared to be conflicted in deciding whether he should accept the plea or not and that the morning started off with some hesitancy, on Baker's part, to accepting a plea. (*Id.* at PAGEID # 1041, 1043-44.)  Mr. Durden testified that he and Baker read the plea agreement and statement of facts proposed by the Government on the morning of November 4, 2019, that Baker also conferred with his mother, and Baker ultimately made the decision to enter a plea.  (*Id.* at PAGEID # 1037-38.)  Mr. Durden testified that neither he nor anyone forced Baker into pleading guilty.  (*Id.* at PAGEID # 1044.)

---

[3] Prior to Mr. Durden's testimony, Baker filed a written waiver of his "attorney client privilege for any communications between Attorney Aaron G. Durden and" Baker.  (Doc. 151.)

Mr. Durden also testified that, to his knowledge, Baker did not appear to be under the influence of alcohol or drugs or medication or anything that would affect his ability to comprehend or understand what was going on during the morning of November 4, 2019. (*Id.* at PAGEID # 1039.) According to Mr. Durden, Baker appeared to be clear-headed. (*Id.* at PAGEID # 1040-41.) Baker did not express to Mr. Durden that he did not understand what the judge was asking during the plea colloquy or that he misunderstood or couldn't comprehend the terms of the plea agreement. (*Id.* at PAGEID # 1054.)

Mr. Durden also testified that the day after the plea (i.e., November 5, 2019), he received a phone call in which Baker said that he wanted to withdraw his plea. (*Id.* at PAGEID # 1045-46.) On that call, Mr. Durden informed Baker that he (Mr. Durden) did not want to discuss that issue over the phone—particularly because someone else was also on the line—but that he (Mr. Dudren) would come to see Baker and that Baker should think about it over the upcoming weekend. (*Id.*) Mr. Durden testified that he met with Baker at the county jail on Friday, November 8 for about an hour. (*Id.* at PAGEID # 1045-46.) He recalled Baker indicating that he regretted his decision to plead guilty. (*Id.*) Mr. Durden again told Baker to think about it over the weekend. (*Id.* at PAGEID # 1050.) Mr. Durden testified that he felt at that time that it would be in bad faith for him (Mr. Durden) to file a motion to withdraw the plea on Baker's behalf. (*Id.* at PAGEID # 1051.)

Finally, among other things, Baker testified on rebuttal that he was "under a misunderstanding about the whole plea process and [his] plea rights and all that," he was confused about "the appeal process," and that he "really wasn't clear-headed" and doesn't "really recall a lot of what went on in that situation." (Doc. 155 at PAGEID # 1069.)

## II.    ANALYSIS

In the Motion, Baker states that he wants to withdraw his guilty plea.  (Doc. 128 at PAGEID # 578.)  He argues that he is "innocent of the[] charges and if it were not for Mr. Durden's [alleged] ineffectiveness and coercive actions leading [him] to a state of severe mental and emotional distress [he] would not have accepted [the] plea agreement."  (*Id.* at PAGEID # 579.)  Baker asks that the Court "disregard the [plea] colloquy, as it was given in this mental and emotional condition and therefore not made knowingly or intelligently," and for the Court to the allow him to withdraw his guilty plea.  (*Id.*)  Therefore, the Court interprets the Motion as both a challenge to the validity of Baker's guilty plea and a request by Baker to withdraw his guilty plea.

### A.  Validity of Baker's Guilty Plea

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant."  *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (citing *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)); *see also* Fed. R. Crim. P. 11.  "Rule 11 is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent."  *Id.* (internal quotation marks omitted).  The reasoning behind such protection includes that, by pleading guilty, the defendant is waiving his or her constitutional right to a trial by jury. *See Dixon*, 479 F.3d at 434 ("A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged").

The Court is satisfied that Baker's plea was knowing, voluntary, and intelligent.  In accordance with Rule 11, the Court verified that Baker's plea was voluntary and that Baker understood his applicable constitutional rights, the nature of the crime charged, the consequences

of his guilty plea, and the factual basis for concluding that he committed the crime charged (*see* Doc. 142). *Dixon*, 479 F.3d at 434. Specifically regarding the voluntariness aspect, the following exchange occurred between the Court and Baker while he was under oath, as referenced above:

> THE COURT: Mr. Baker, is there anyone forcing you, threatening you, compelling you to do this against your will?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: You have thought about it. You have weighed all your different options. You have talked to Mr. Durden on numerous occasions, considered everything, and this, then, is what you wish to do to enter these pleas of guilty; is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And that's a voluntary decision on your part?
>
> THE DEFENDANT: Yes, Your Honor.

(Doc. 142 at PAGEID # 650-51.) The Court finds that, although Baker understandably struggled with making his decision to plead guilty, he was not coerced into doing so and he made his own informed decision to do so. (Doc. 142; Doc. 152 at PAGEID # 790; Doc. 155 at PAGEID # 1037-38, 1041, 1043-44, 1049; *see also* Doc. 155 at PAGEID # 1058 (Mr. Durden testifying that Baker was the one asking Mr. Durden to have the Government consider proposed edits or additions to the plea agreement on the morning of the guilty plea).)

Additionally, the Court finds that Baker was not impaired at the time of his plea such that it would affect the validity of his plea. First and foremost, again, the following exchange took place during the plea colloquy while Baker was under oath:

> THE COURT: Mr. Baker, have you had any type of drugs, alcohol, or medication within the last 24 hours?
>
> THE DEFENDANT: No.
>
> THE COURT: So you are clear-headed here this morning?
>
> THE DEFENDANT: Yes, sir.

(Doc. 142 at PAGEID # 650-51.) Mr. Durden likewise stated during the plea colloquy that he considered Baker competent to enter his pleas and that he believed Baker understood everything that had been discussed. (*Id.*) And, the undersigned found during the plea colloquy that Baker is "in full possession of his faculties and is competent to enter his plea," that Baker "is not under any apparent influence of narcotics, hallucinogens, alcohol, or medication," and that Baker "understands the nature of these charges to which he has pled and the penalties that are provided by law for those violations." (*Id.* at PAGEID # 652-54.) Baker certainly did not express or exhibit any confusion during the plea colloquy. (*See* Doc. 142.)

Also, as the Government points out in the Opposition, Baker made no mention of allegedly being under the influence of medication in the Motion or in the since-stricken December 13, 2019 motion for withdrawal of guilty plea. (*See* Docs. 126 and 128; *see also* Doc. 155 at PAGEID # 1059 (Mr. Durden testifying that, other than Baker expressing that he regretted his decision, he did not recall Baker ever informing him of any other reason why he wanted to withdraw his plea).) Instead, this argument only came to the attention of the Government and the Court during Baker's own June 25, 2020 testimony at the hearing on the Motion—over half-a-year after his guilty plea. (Doc. 153 at PAGEID # 840, 873-74.) Moreover, even assuming that Baker had taken medication before his plea (in direct conflict with his sworn statement during the plea colloquy), upon being asked about whether any medications that he took at the time of his guilty plea affected his ability to understand and comprehend what the undersigned was asking him, Baker merely testified: "I could say that it could have." (Doc. 153 at PAGEID # 874.) In sum, the Court finds that Baker's guilty plea to Counts Four and Six was and is valid. *Catchings*, 708 F.3d at 716; *Dixon*, 479 F.3d at 434.

### B.  Baker's Request to Withdraw His Guilty Plea

An argument that a plea is invalid is distinguishable from an argument to withdraw the plea, although the two arguments can be related and overlapping.  *See Catchings*, 708 F.3d at 716-19.  "It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court."  *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987).  "The withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice."  *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (internal quotation marks omitted).

"Under Rule 11(d), a defendant may withdraw a guilty plea if 'the defendant can show a fair and just reason for requesting the withdrawal.'"  *Catchings*, 708 F.3d at 717 (quoting Fed. R. Crim. P. 11(d)(2)(B)).  "It is the defendant's burden to demonstrate that proper grounds exist for the granting of" a motion to withdraw his guilty plea.  *Dixon*, 479 F.3d at 436.  "In making the determination of whether the defendant has shown a 'fair and just reason,' [courts] consider the totality of the circumstances, including the factors set forth in *United States v. Bashara*:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Catchings*, 708 F.3d at 717-18 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (superseded by guidelines amendment on other grounds, U.S.S.G. § 3B1.1)).  "These factors are a general, non-exclusive list and no one factor is controlling."  *Id.* (internal quotation marks omitted).  "The relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw."  *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citation and internal quotation marks omitted); *see also United*

*States v. Watkins*, 815 F. App'x 22, 24 (6th Cir. June 5, 2020).

Regarding the first and second factors, the Court finds that, together, they weigh in favor of allowing withdrawal. Baker entered his guilty plea on November 4, 2019. (Doc. 142.) On December 13, 2019, Baker filed, *pro se*, a motion for withdrawal of guilty plea, which the Court struck because he was still represented by counsel and hybrid representation is prohibited. (*See* Docs. 126, 127.) Although the Motion at issue was not filed until January 3, 2020, the Court finds that the appropriate time for purposes of this factor would be between November 4, 2019 and December 13, 2019—the date of Baker's since-stricken motion to withdraw his plea. Therefore, for purposes of the first factor, 39 days elapsed between the plea and the motion to withdraw it. However, the Court finds it appropriate to consider the first and second factors together in this case, particularly given that 39 days is not an extremely lengthy period of delay.[4] *See Spencer*, 836 F.2d at 239 (considering amount of time that elapsed between the plea and the motion to withdraw it in the context of defendant's alleged reason for failure to move for withdrawal earlier); *United States v. Osborne*, 565 F. Supp. 2d 927, 933 (E.D. Tenn. 2008) (finding 133-day delay in filing would weigh against withdrawal absent a determination that the delay was justified—which the court then found to be the case); *United States v. Jannuzzi*, No. 07-4521, 2009 U.S. App. LEXIS 4830, at *8, 2009 WL 579331 (6th Cir. Mar. 9, 2009) (explaining that the defendant's 30-day "period of delay is at the boundary line between what is acceptable and what is not" for purposes of the first factor).[5]

---

[4] The Government's Opposition cites to nine cases in support of its argument regarding the first factor, eight of which had delays in excess of 39 days. (Doc. 157 at PAGEID # 1095-96.) The one that did not, *Spencer*, involved a 36-day delay and a factually distinguishable scenario in which the defendant only moved to withdraw his plea after learning of the suicide of a non-indicted co-conspirator and the court appeared to agree with the Government's argument that the grounds, manner, and timing of the defendant's motion to withdraw were suspect. *Spencer*, 836 F.2d at 239.

[5] The Court notes that, regardless of whether it considers the first and second factors together or separate, the ultimate outcome of the Motion would be the same: denial.

Baker testified that he immediately regretted his plea and that he expressed his desire to withdraw his plea to Ms. Wilcoxson, Ms. Clemons, and Mr. Durden around the same day that he pleaded guilty. (Doc. 153 at PAGEID # 838-39, 849.) Ms. Wilcoxson testified to the same. (Doc. 152 at PAGEID # 791.) And, Mr. Durden testified that Baker called him the day after the plea and said that he wanted to withdraw his plea. (Doc. 155 at PAGEID # 1045-46.) In fact, Mr. Durden testified that Baker indicated that he wanted to withdraw his guilty plea in all communications that he had with Baker since his call with Baker on November 5, 2019 (i.e., the day after the plea). (Id. at PAGEID # 1059.)

As referenced in the Background section, above, Baker explained that the only reason he did not file a motion before December 13, 2019 was that the Court had previously informed him that he "was not allowed hybrid representation" and that he was "not allowed to file motions on [his] own." (Doc. 153 at PAGEID # 862.) Mr. Durden was still his lawyer, and Mr. Durden testified that he told Baker that he did not feel that he (Mr. Durden) could file a motion to withdraw his guilty plea for Baker given that he (Mr. Durden) had stood with Baker during the plea colloquy and had provided certain answers to questions from the Court during that plea colloquy. (Doc. 155 at PAGEID # 1045-46, 1050, 1059-60.)

The Court understands Mr. Durden's concern with filing the Motion and acknowledges that it had recently admonished Baker for personally filing motions while he was represented by counsel. (See, e.g., Doc. 116 (October 29, 2019 order stating: "Defendant personally filed a 'Motion in Objection to Non-Suppressed Evidence' … Hybrid representation is prohibited. That motion is hereby STRUCK.") (emphasis removed); Doc. 124 (November 5, 2019 order stating: "Defendant personally filed a 'Motion Preserving Rights' … Hybrid representation is prohibited. That motion is hereby STRUCK.") (emphasis removed).) In the Motion, Baker referenced the

Court's earlier admonishment and explained that filing his December 13, 2019 motion *pro se* "was not an attempt to disregard [the undersigned's] earlier instructions about hybrid representation," but instead was necessary because Mr. Durden left him "with no other option" because Mr. Durden "stated that he could not file this motion on my behalf due to its implications." (Doc. 128 at PAGEID # 578.)

In sum, the Court finds that, given the particular circumstances presented here, the first and second factors, together, weigh in favor of Baker. *See Jannuzzi*, 2009 U.S. App. LEXIS 4830, at *7-8 (finding that thirty-day delay period weighed in defendant's favor on motion to withdraw his guilty plea where he filed it on the day after his new counsel formally entered his appearance); *Osborne*, 565 F. Supp. 2d at 933-34 (delay justified, and factor weighed in favor of withdrawal, where it appeared that the defendant may have requested his attorney to file a motion to withdraw as early as two weeks after the plea, defendant persisted in filing such a motion, and defendant eventually filed a *per se* motion); *U.S. v. Gray*, No. 4:13-CR-17, 2014 U.S. Dist. LEXIS 185554, at *3-4, 2014 WL 11295708 (W.D. Ky. May 14, 2014) (considering the first two factors together and finding that, although the defendant did not file his motion to withdraw his plea until 30 days after the plea was entered, it appeared that the defendant took quick steps to facilitate filing the motion and the amount of time from the guilty plea to the motion to withdraw was "relatively short under the circumstances"). However, finding that these two factors, combined, weigh in favor of Baker certainly does not decide the Motion; the Court will assess the other factors as well. *Gray*, 2014 U.S. Dist. LEXIS 185554, at *9-10 (ultimately denying motion to allow defendant to withdraw his plea, despite finding that the first two *Bashara* factors weighed in favor of allowing him to withdraw his plea); *Jannuzzi*, 2009 U.S. App. LEXIS 4830, at *8-9 ("[r]egardless of the weight given to the timeliness factor … a defendant needs the remaining factors viewed as a whole

to weigh in his favor to demonstrate an entitlement to relief"); *United States v. Evans*, 406 F. App'x 946, 947-48 (6th Cir. 2011) (affirming district court's denial of defendant's motion to withdrawal despite district court's implied recognition that the "timeliness of the motion" factor weighed in defendant's factor when defendant "filed his first pro se motion to withdraw his guilty plea less than two weeks after he had entered the plea").

Regarding the third factor (i.e., whether the defendant has asserted or maintained his innocence), it weighs against withdrawal, although the Court does not find that it weighs too strongly. The Court acknowledges that testimony by Baker, Ms. Wilcoxson, and Ms. Clemons supports that, prior to the morning of his guilty plea, Baker did not indicate that he wanted to plead guilty but instead he wanted to go to trial. (*See, e.g.,* Doc. 152 at PAGEID # 788, 806; Doc. 153 at PAGEID # 835.) Additionally, the Court acknowledges that the PSR indicates that Baker "stood mute on acceptance and provided no statements regarding his acceptance of responsibility" during his November 13, 2019 interview by the probation officer," Baker testified that he "didn't want to make a statement of accepting responsibility [during that interview] because [he] was innocent," and Baker testified that he wanted to withdraw his plea because he is not guilty. (PSR at p. 11, ¶ 38; Doc. 153 at PAGEID # 839-41.)

Yet, significantly, Baker specifically and unequivocally admitted his guilt under oath during the plea colloquy:

> THE COURT: Mr. Baker, are you entering these pleas to these charges because you are, in fact, guilty as charged?
>
> THE DEFENDANT: Yes, Your Honor.

(Doc. 142 at PAGEID # 651.) The Sixth Circuit has stated that, "[a]bsent extraordinary circumstances, when the Rule 11 procedures are fully adequate, [courts] hold a defendant pleading guilty to the statements he makes at his plea hearing." *Watkins*, 815 F. App'x at 25 (agreeing with

the district court's finding that there was no reason to set aside the defendant's statements that were made under oath); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("[t]o view the Rule 11 plea colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system established for providing due process to the defendant undermines that very process[,] [a]nd when a defendant asserts, in support of a motion to withdraw a guilty plea, that he lied in pleading guilty – and repeatedly so – he provides an example of such manipulation"); *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (factor weighed in favor of denying motion where defendant testified at plea hearing that "he was in fact guilty" and signed a plea agreement confirming his guilt and the factual basis for the charges, despite asserting "his innocence before and after the guilty plea").

Regarding the fourth factor (i.e., the circumstances underlying the entry of the guilty plea), it weighs against withdrawal. The Court and Baker, a 35-year-old man, engaged in a detailed plea colloquy. (Doc. 142.) The Court finds that Baker "knowingly, voluntarily, and intelligently pleaded guilty with a full understanding of his rights and the consequences of his plea." *Catchings*, 708 F.3d at 718-19 (finding that the fourth factor supported denial of motion to withdraw guilty plea). Further support for the Court's finding on this factor is provided above in Section II A concerning the validity of Baker's guilty plea. *Catchings*, 708 F.3d at 718-19; *Owens*, 215 F. App'x at 502 (defendant's claim that he was coerced by his own counsel and government's counsel was belied by the district court's care in ensuring that his guilty plea was voluntary).

Additionally, Baker spoke with his attorney and, at his request, his mother prior to deciding to enter his plea. (Doc. 142 at PAGEID # 622-23, 644-50; Doc. 155 at PAGEID # 1037-38, 1049.) The Opposition also points out that "the United States agreed to dismiss three counts," Baker's plea was conditional and permitted Baker the right to appeal the ruling on his earlier motion to

19

suppress, and, as the Court informed Baker, the maximum imprisonment for Counts Four and Six are life imprisonment (Doc. 142 at PAGEID # 629-38; Doc. 157 at PAGEID # 1099).  *See United States v. Goodloe*, 393 F. App'x 250, 255-56 (6th Cir. 2010) (considering sentencing breaks and favorable plea offers in analyzing this factor).  Despite the understandable pressure, stress, and emotion involved in deciding whether to plead guilty, the Court finds that the fourth factor weighs against granting the Motion.

Regarding the fifth factor (i.e., the defendant's nature and background), it weighs against withdrawal.  *United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011).  Baker has earned a GED, has attended some college, and appears to the Court—based upon his filings and his statements in the courtroom—to be quite intelligent and sophisticated.  (*See, e.g.* Doc. 142 at PAGEID # 621-22.)  Baker was—and remains—quite involved in his case (including having filed several motions *pro se*), and he admitted that he always understood the mandatory minimum sentences for the conspiracy and overdose counts that he was up against.  (*See, e.g.,* Doc. 153 at PAGEID # 902-03.)  Mr. Durden likewise testified that Baker was knowledgeable with what was going on in his case.  (Doc. 155 at PAGEID # 1037.)

Regarding the sixth factor (i.e., the degree to which the defendant has had prior experience with the criminal justice system), it weighs against withdrawal.  Baker has extensive prior experience with the criminal justice system.  The criminal history section of Baker's PSR spans several pages and paragraphs.  (*See* PSR at pp. 13-23, ¶¶ 55-86.)  His criminal history also involves at least one earlier very serious crime in which he was charged, represented by an attorney, entered into plea negotiations, pleaded guilty, was sentenced, and was incarcerated.  (*Id.* at pp. 14-15, ¶ 56; Doc. 153 at PAGEID # 924-25.)  Additionally, Baker is intelligent and has shown an ability to effectively communicate *pro se*, both in filings with the Court and during hearings in this case.

*Watkins*, 815 F. App'x at 26 (defendant's significant prior contacts with the criminal justice system, and his proven ability to communicate *pro se*, demonstrated a relatively high level of sophistication regarding the judicial system, which weighed against permitting withdrawal).

The PSR states the following concerning Baker's criminal history computation: "The criminal convictions above result in a subtotal of 11. However, 8 criminal history points have been counted under U.S.S.G. § 4A1.1(c) and the maximum is 4. Therefore, 4 points are deducted for a total criminal history score of 7. … According to the Sentencing Table in Chapter 5, Part A, a criminal history score of 7 establishes a criminal history category of IV." (PSR at p. 23, ¶¶ 87-88.) Baker also has a number of pending charges. (*Id.* at pp. 23-25, ¶¶ 89-100.) Baker concedes that this factor "weighs against permitting him to withdraw his guilty plea." (Doc. 156 at PAGEID # 1085.) The Court finds that the sixth factor weighs heavily against granting the Motion. *Catchings*, 708 F.3d at 719 (finding that the sixth factor supported denial of motion to withdraw guilty plea where the defendant had "fairly extensive prior experience with the criminal-justice system, as reflected in his criminal history category of III").

Regarding the seventh factor (i.e., potential prejudice to the government if the motion to withdraw is granted), it too weighs against withdrawal. The Court finds that the Government has shown that the potential prejudice it would suffer if the Motion is granted would be significant. For example, Detective Braun testified about difficulties in locating the Government's witnesses and issues created by the length of time that this case has already been pending. The Government's eyewitnesses are drug addicts or former drug addicts. The Government's concerns about witnesses are certainly legitimate, particularly given that the case had already been pending for two-and-a-half years at the time of Baker's guilty plea, with extensive pretrial litigation and Baker changing lawyers a number of times. (Doc. 153 at PAGEID # 834.) The Government's witnesses also

include multiple scientists and doctors, who were prepped prior to the anticipated November 4, 2019 trial. (Doc. 157 at PAGEID # 1103.) It is undisputed that the Government was prepared that morning to proceed with what was expected to be a relatively lengthy trial. The Court finds that the seventh factor, to the extent that it is necessary to be considered, weighs in favor of denying the Motion. *United States v. Martin*, 668 F.3d 787, 797 (6th Cir. 2012) (finding factor weighed against withdrawal where, at the time of the plea, the government was prepared for trial and the amount of time and effort it would take to restart the trial—and the delay's effect on witnesses' memories—would be prejudicial, despite a lack of difficulty in finding the witnesses given that they were imprisoned); *Catchings*, 708 F.3d at 719 (the seventh factor need not be considered if the defendant "has not put forth a fair and just reason for allowing withdrawal of his plea").

Thus, only the first two *Bashara* factors weigh in favor of allowing withdrawal. Considering the totality of the circumstances, including the *Bashara* factors, the Court finds that Baker has not shown a fair and just reason to allow the withdrawal of his guilty plea. Fed. R. Crim P. 11(d)(2)(B); *Catchings*, 708 F.3d at 717-18; *Dixon*, 479 F.3d at 436.

## III.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Withdrawal of a Plea (Doc. 128).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 6, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE